Good morning, Your Honors. Robert DuPont appearing on behalf of Appellant's Mata Mata family. Will you speak up, please? Speak louder. I can't hear you. Yes. Robert DuPont appearing on behalf of the Mata Mata family appellants in this matter. Your Honors, appellants today seek a reversal of the voluntary departure orders entered against them and a refusal of the BIA to remand this case to immigration court for additional relief under 237A1H. Let me interrupt and ask you a question. I want to know whether the sons should be treated differently since at the time they were admitted and the husband had filed an application for them, he knew that the Kansas birth certificate was invalid. Well, Your Honor, there's two things going on here. First is the assumption made throughout government briefs that this Kansas City birth certificate was known to be invalid. It wasn't known to be invalid until a 2006 final appellate decision by the Kansas court rejecting their efforts to have the birth certificate reinstated. It was valid until such time as it was described as invalid by the Kansas State Administrative Authority. Well, so you're saying that even though it was stricken, that because you filed a suit, because the parties here filed a suit saying they didn't think it should be invalid, that therefore that extends this until the time the suit is finished? Is that what you're saying? Even though it had been canceled before you filed suit? Yes, Your Honor. There's always due process in terms of being able to appeal a decision of the Kansas State Administrative Agency. And there's an element of bootstrapping. This birth certificate didn't just cancel itself. The State Administrative Agency didn't wake up one day and decide they didn't like the decision they had made. It was done at the behest of USCIS and the Department of State delivering information to the State of Kansas. And I'd like to point out in that final appellate decision the lament of Judge Green, who said he found it disturbing that there's less due process protecting a birth certificate than there is protecting a driver's license. Counsel? I really don't understand the idea of not attributing scienter until the final decision by the highest level in Kansas. Here's my thinking. If the man's mother was a citizen, so he was a citizen, he would never, and if he thought that, if his subjective state of belief, true or false, was I'm a U.S. citizen because my mother was born in Kansas, he would never have applied for a green card in the first place. He wouldn't have to. He'd be a citizen, and he would have claimed citizenship. It looks as though it wasn't until his grandmother was pretty well along in years that a birth certificate in Kansas was even issued for her. She must not have been saying since he was a little boy that she was born in Kansas. Well, yeah, that's interesting. And he must have known from the time proceedings in Kansas started, not when proceedings in Kansas finished, that her Kansas birth certificate was very much at issue. Well, Your Honor, I'd like to point out from the date of 1945, which is the birth record of Jose Antonio Matamata, his mother claimed U.S. citizenship or birth in the U.S. What his knowledge of the process for trying to confirm citizenship via N-600 versus... I don't remember. His birth certificate, he was born in Mexico, right? He was born in Mexico. A certified administrative record at 351-352 shows a birth record recorded for Jose Antonio Matamata in Mexico, indicating his mother was born in, I believe it says, Morris, Kansas. Then you have the marriage record. So why didn't he apply for U.S. citizenship? He wouldn't automatically be a derivative citizen if he's born in a foreign country. He has to live in the United States. There's some issues with whether the mother is the U.S. citizenship versus the father being a U.S. citizen. I really haven't inquired as to why the family chose the N-600 route versus... If you're born of an American mother abroad, you get her citizenship. If you're born of an American father abroad, you don't. Well, regardless of the method that he chose, he chose to request legal permanent residency versus a direct naturalization route. Regardless of the route that he chose, USCIS, Department of State, recognized that the citizenship claim of the mom. They issued I-130 visas, and they did so for Jose Matamata, his wife Marcelina, all of his children. These I-130s are, in fact, have never been revoked. And that gets us back to the issue of misrepresentation. Where is the mens rea here? Who applied for the Kansas birth certificate? I think it was an application in the 80s for the mother. Was it her son who applied or her who applied? I'm not specifically aware if it was the mother or the son. By the 80s, she was getting along in years. I would like to point out that both birth certificates being considered by the court are late-filed birth certificates. This is important because we list a July 14, 1919 birth date for Ms. Maria Delfina, yet this Mexican birth certificate was not recorded until December of that same year. So we have a five-month, and this is an important point, Your Honor, it's a five-month gap, and it also would indicate that the Mexican birth certificate does not indicate a geographic location or address for place of birth. It states really a legal concept, domicilio or domicile. And what we are alleging and what the record supports is that this family was a transient working family. Their place where they were residing was Morris, Kansas. There's nothing inconsistent. I'm sorry. I'm on a roll. Sorry, Your Honor. Can you tell me exactly how the birth certificate, the Kansas birth certificate, was used and who used it? I believe it was used as a supporting document for the immigrant visa petitions. Who filed the petition? The mother files a petition for her son, Juan, I mean Jose Antonio Matamata. He, in turn, having acquired legal permanent residency, is filing the immigrant visa petitions for his wife and son. Did he ever use the birth certificate himself? Did he ever submit it to anybody or did the mother submit it? Your Honor, I'm not sure exactly how the papers were assembled and submitted to the mother. That's a pretty important fact, isn't it? I mean, if he didn't use the false document, assuming it's false, I'm not sure what we impute to him. Your Honor, the mother took her birth certificate. It reports to be a Kansas birth certificate, right? Yes. And she files something with what was then the INS? Yes, Your Honor. And they approve that. And once they approve it, he can come and get a visa. Correct. Did he ever make use of the birth certificate, to your knowledge? Did he ever tender it? I'm not aware whether he has personally tendered that birth certificate. Okay. Your Honor, I would also like to go to the issue of the 237A1H claim. There are claims that this was not raised before the BIA. Page 2 of the CAR would belie that claim where the court itself says, yes, this claim is burden raised and we're looking at it. The claim that the judge did not apprise appellants of their ability to seek relief under 237A1H was raised before the BIA. They did have jurisdiction to do so. And also with regards to the voluminous nature of this record, it is large. I think it approaches 1,000 pages. However, the references to the U.S. citizen's son of the Mata family, Refugio, occur on the primary documents that the court would be examining on the issue of any potential misrep of the immigrant visa petitions for Marcelina Mata and her sons. Let me ask you a question. I didn't get to the issue of invalid entry documents, but could you tell me which of the petitioners, would have been invisible because of invalid entry documents? Your Honor, technically all documents were valid at the time of entry. They had not been challenged, and indeed the I-130 immigrant visas still have not been challenged. There's been no notice of attempt to revoke. There's been no effort to revoke these documents that allowed this family to enter. I'd also like to point out that NTAs were originally filed one year prior to the death of Maria Delfina Mata. She died here in the United States, and she was never placed in removal proceedings. The government never directly challenged her claim to citizenship. And I'd also like to point out that Refugio Mata. Counselor, you're over time. Okay, thank you, Your Honor. Thank you, Counsel.  Thank you, Your Honor. I could just have one second here. Jeffrey L. Mencken, United States Department of Justice for the Attorney General. Your Honors, this case turns on a false claim of citizenship by Maria Delfina Mata. The State of Kansas canceled the birth certificate, which was the only U.S. government-issued document stating that she was a U.S. citizen. Could you focus on the son's scienter and what he knew regarding the falsity of her birth certificate? Your Honor, the son, Jose, was the beneficiary of the petition filed by the mother, so he doesn't need to know anything. But strict liability, you don't have to prove fraud, you just have to prove strict liability? Well, no, he's the beneficiary. I understand. He's just not signing the application. Okay, look, if he believes in good faith that his mother was born in Kansas, he can be removed for fraud? He can if the basis of his presence in the United States is a claim by the mother that she was a citizen when she got him into the country. Is there a case that says that? If you go back, Your Honors, to the idea that if the factual predicate underlying the entry isn't true, we can't make her a citizen just because he's here. There may be other reasons to kick him out, but I don't see where you have established fraud that he knew that a statement was false when he made it. The point I'm trying to make, Your Honor, and perhaps I'm not phrasing it properly, is that he is only here because his mother filed a visa petition. She filed the visa petition as a U.S. citizen, which she was not, because Kansas said that her birth certificate was fraudulent. Oh, I think I get what you're saying, but I want to make sure that I understand it. Sure. What I think you're saying is the fellow before us, Jose Antonio Matamata, is not the applicant. No, he didn't apply for his own visa. Instead, the mother is the applicant, and the mother committed the fraud by lying about where she was born. And being a U.S. citizen. And that fraud, Your Honor, knocks down all the dominoes, because everybody is here as a result of that fraud. Nobody enters the country. I guess the reason it's a little confusing is these people are babies. It's not like the woman bringing her babies in and saying, I'm a U.S. citizen, so my babies can come in. This is more, he's a middle-aged man, and the elderly lady is applying for a visa for her middle-aged son. Yes. Maria Delfina Mata was 67 years old and living in Mexico when she applies for this visa on behalf of her son. And the only document that says that she's a U.S. citizen is issued by Kansas, which then finds that it was fraudulent. And, frankly, U.S. Was he living, did he have to sign the application? I don't believe he does, Your Honor. For some reason I thought that you could only apply for visas for your children when they were still minors. That's not the case? I don't think that that was the basis. My understanding is that he comes in because his mother applies. And she applies as a U.S. citizen, and that's a fraudulent claim. How do we know that? Because Kansas said so. And I would point out that USCIS had to go to Kansas because only Kansas had the authority to determine the validity of the birth certificate. This is not something that USCIS could do. It's not something the Immigration Court could do. Did Mata Mata, the son, did he do anything fraudulent? There's no evidence of that, and it doesn't matter because his presence is determinative, is determined by the validity of his visa application filed by his mother on the premise that she is a U.S. citizen, which she was not. That's a predicate fact that nobody can make up or paper over. It's like saying I'm applying for a visa for a woman I'm saying is my wife who is really not my wife. That's never cured. There are naturalization decisions going back to 1970 in the Ginsburg decision or even the Fedorenko decision more recently that say that lawful presence can never exist following a lawful and unlawful entry. So that's why the son applies, the mother applies for the son, the son applies for everybody else. But that fraud up front knocks down everything that happened after that. Could you tell me, I had looked at the, I think I looked at the wrong paper here. Which petition should we be looking at? Well, Your Honor, the, I guess I was looking at Excerpts 841. So I figured Jose applies for Jose, but if I understand the argument right, Jose is in the same position as a little baby who doesn't commit any fraud at all, but he can't get into the U.S. if his parents lie to get him in. That's my understanding, Your Honor, on the basis of a. Show me the page. I evidently looked at the wrong one. I unfortunately didn't bring the record with me from Washington, Your Honor. I have a testimony summary, but not. You didn't bring excerpts of excerpts or something like that? The excerpts that I have, Your Honor, include the birth certificate and some other things. But unfortunately, I didn't, and I apologize to the Court for not bringing that. You have got this thing where Jose signs something. Well, Jose, then, is the applicant on behalf of the rest of his family. But he applies as a lawful resident, which he can't be if he's not lawfully present, if his mother wasn't a citizen, which is what she claimed she was. So because the birth certificate is fraudulent, the factual predicate underlying all the petitioner's presence falls apart. Does he have to have knowledge of this falsity in order to be in trouble here when he signs applications for his wife and children? Not if the underlying ‑‑ if he's applying as the son of a U.S. citizen and it's determined that he's not the son of a U.S. citizen. In fact, the birth certificate was canceled in 1989. That's when Kansas wrote fraudulent all over it. So at that point, he doesn't apply for the rest of his family. I think it's ‑‑ Look, I'm still not following this. I'm still not following it. I understand the logic of if grandma files the application and grandma commits a fraud, it's not the son's fraud. But it doesn't matter that it's not the son's fraud. Right. Because the son never applied.    It doesn't matter that it's not the son's fraud. Right. It's by means of fraud. I understand the logic of that and it makes sense to me. But then I look at 841 of the record and it doesn't look like grandma applied. It looks like the son applied. But it's confusing looking at all these petitions. And I sort of suspect I'm not looking at the right thing. The best I can do, Your Honor, is take a look at it when I return home and supplement the file. Yeah, this is really the time when we look at them and fish are cut bait. I regret, Your Honor, that I didn't bring that. It's a gamble as to how much of the record to fly across country with. One thing that I would like to address regarding the motion to reopen, if I may. I flew further than you. And a perilous time it is to be in an airplane, Your Honor. First of all, the documents that say that Refugio, which was the grandson or son who became a citizen, all of the documents that even mention his name predate his citizenship by several years. Also, the claim that we say was not exhausted below was not that he was a citizen and therefore everyone should get cancellation, but that the immigration judge had reason to know that he was a citizen, even though nobody ever told him that a year before proceedings began, one of the sons had become a citizen. So that's the claim that we said was not exhausted. But even if it was, the Board, by saying that something that was known to the parties a year before immigration proceedings began, was never presented to them, was never presented to the Board, there's no finding, there's no claim of error in that. The Board said this was information that you had before. You could have raised it. You didn't. And there's no challenge to that. And therefore, I'm sure. Let me ask you a hypothetical question, okay? Let's suppose we interpret 212A6Ci, the fraud provision, to require that he had to have had some kind of fraudulent intent himself. He had to know that his mother was born in Mexico and she told him all his life that she's from Kansas, okay? So let's just hypothetically assume that we find that he has to have some kind of knowledge of the falsity at the time he makes the false statement, okay? Yes. I take it from what you've said before, we don't have proof of that. So my next question would be, is there another way that they can go about removing him because he shouldn't have been admitted anyway, even though it wasn't fraud? At the end of the backstop is that he did not enter with a valid visa. And there's no scienter there at all. So we can talk about this till the cows come home. When all is said and done, there's another way to kick him out, which is to say that even if it wasn't fraudulent, it's just not valid, you're out. Absolutely. Okay. Why don't we do that? I can't say why that wasn't done that way. But Your Honor is correct. If we go back then 18 months from now, we're here again. Because that bell can't be unrung. The toothpaste is out of the proverbial tube. If he enters as the cat's out of the bag. My time is exhausted. Otherwise I'd have some more. But he's not here legally, bottom line. He enters based on a fact that is not a fact. And we can't fix that. Thank you, Your Honor. Thank you, counsel. Counsel, you exhausted your time. You have more questions? No, I didn't. You exhausted your time. Mata Mata is submitted. We'll hear Saloma versus Honda law firm disability. Counsel.
judges: Hall, Kleinfeld, Silverman